Robert H. Scott (10981)
Chandler P. Thompson (11374)
AKERMAN SENTERFITT LLP
50 West Broadway, Suite 475
Salt Lake City, Utah 84101
Telephone:  (801) 708-6880
Facsimile:  (801) 708-6889
robert.scott@akerman.com
chandler.thompson@akerman.com

Michael B. Wall (admitted pro hac vice)
Akerman Senterfitt LLP
511 Sixteenth Street, Suite 420
Denver, CO 80202
O: 303-260-7715
F: 303-260-7714
michael.wall@akerman.com

*Attorneys for Defendants Bank of America, N.A., individually and as successor by merger to BAC Home Loans Servicing, LP, Federal National Mortgage Association, ReconTrust Company, N.A., and Mortgage Electronic Registration Systems, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| PATRICIA MONSOOR and JAMES MONSOOR,<br><br>        Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.; BAC HOME LOANS SERVICING, L.P.; RECONTRUST COMPANY, N.A.; FEDERAL NATIONAL MORTGAGE ASSOCIATION; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; and DOES 1-15,<br><br>        Defendants. | **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>**(FED. R. CIV. P. 12(b)(6))**<br><br>Case No. 2:11-cv-00530-BSJ<br><br>Judge: Bruce S. Jenkins<br><br>(Filed Electronically) |

Defendants Bank of America, N.A. (**Bank of America**), individually and as successor by

merger to BAC Home Loans Servicing, LP (**BAC**), Federal National Mortgage Association

(**FNMA**), ReconTrust Company, N.A. (**ReconTrust**) and Mortgage Electronic Registration Systems, Inc. (**MERS**) (collectively, **defendants**) file this memorandum in support of their motion to dismiss plaintiffs' first amended complaint.

## INTRODUCTION

Plaintiffs Patricia and James Monsoor (**plaintiffs**) bring this action in an effort to challenge the pending sale of the property at issue, notwithstanding their admitted default under the loan agreement and failure to bring their loan current. Plaintiffs, however, cannot maintain any claims against defendants.

Plaintiffs added several new claims to their first amended complaint (**FAC**), but they are all based on the same deficient underlying allegations. Plaintiffs admit they defaulted under their loan agreement following a decrease in income and allege they entered into a trial plan with defendants before ultimately being denied a loan modification. It is therefore clear from plaintiffs' allegations that they have not been damaged in any way.

Each of plaintiffs' claims fails as alleged. Plaintiffs' claims for breach of contract and breach of the duty of good faith and fair dealing fail because they do not adequately allege the existence of a contract or the breach of any term therein, their admitted default precludes such claims, and they cannot allege interference with their rights under any contract. Defendants do not owe plaintiffs a negligence duty and plaintiffs cannot allege causation or damages. Plaintiffs also cannot allege the extreme and outrageous conduct necessary to support a claim for intentional infliction of emotional distress and their RESPA claim fails because plaintiffs' own allegations demonstrate compliance. Lastly, plaintiffs cannot plead the elements of a promissory

estoppel claim and plaintiffs' allegations concerning MERS and ReconTrust have been repeatedly refuted by this Court.

Defendants respectfully request the Court grant their motion to dismiss plaintiffs' FAC without leave to amend.

## STATEMENT OF FACTS

On March 29, 2007, plaintiffs obtained a loan from First Magnus Financial Corporation (**First Magnus**) in the amount of $417,000, secured by the property located at 897 E. 13400 South, Draper, Utah 84020.  (FAC, ¶¶ 1, 10; Request for Judicial Notice (**RJN**), Exhibit 1.) BAC was later assigned the servicing rights to the loan.  (FAC, ¶ 12.)  Plaintiffs allege Bank of America acquired the loan at some point, but that it is now owned by FNMA.  (FAC, ¶¶ 13, 24.)

ReconTrust was substituted as trustee under the deed of trust and on July 23, 2009, ReconTrust recorded a Notice of Default against the property.  (FAC, ¶ 70; RJN, Exhibit 2.) Following the denial of plaintiffs' loan modification application more than a year later (FAC, ¶ 44), the property was ultimately sold at a trustee's sale on January 6, 2011, to FNMA (FAC, ¶ 50; RJN, Exhibit 3.)  However, upon the discovery that plaintiffs had filed for Chapter 13 bankruptcy the same day as the sale, ReconTrust recorded a notice of rescission of the trustee's deed on February 23, 2011.  (FAC, ¶ 52; RJN, Exhibit 4.)  The sale has not occurred to date.

## LEGAL STANDARD

In ruling on a motion to dismiss, the Court must accept well-pleaded allegations as true and must construe them in the light most favorable to the non-moving party.  *See Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007.)  However, the court need not accept as true mere "conclusory" allegations.  *See Coburn v. Nordeen*, 72 Fed. Appx. 744, 746 (10th Cir. 2003).

Rather, "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007).

The Supreme Court recently reaffirmed *Twombly*'s higher pleading requirements in light of a pre-answer motion to dismiss, finding a complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation" to survive dismissal. *See Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). "[N]aked assertions devoid of further factual enhancement" no longer suffice to state a claim. *Id.* (internal quotation marks omitted). The Court further affirmed that a formulaic recitation of claim elements, because of its conclusory nature, is not entitled to the presumption of truth. *Id.* at 1951. The Court must not assume the plaintiff can prove facts she has not alleged, or that the defendant has violated laws in ways not alleged. *See Assoc. Gen. Contractors v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). Nor can the Court "supply additional factual allegations to round out a plaintiff's complaint" or "construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991). Before *Twombly*, a complaint may have withstood a motion to dismiss "if it left open the possibility that a fact not alleged in the complaint could render the complaint sufficient." *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Now, a complaint must contain enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974.

Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ.

P. 8(a). Under Rules 8(a) and 12(b)(6), the court must determine whether, if the allegations of the complaint are true, it is plausible, not merely possible, that the plaintiff is entitled to relief under the relevant law. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).   If the allegations of the complaint are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiffs have brought a claim that is conceivable, but that does not meet the plausibility requirement."  *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1276 (10th Cir. 2009).   Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555).

## ARGUMENT

### A.    Plaintiffs' FAC Violates Rule 8(a)

As an initial matter, plaintiffs' FAC fails because it violates Rule 8 of the Federal Rules of Civil Procedure.   Throughout most of plaintiffs' complaint, and in each cause of action therein, plaintiffs mostly refer to actions taken by "Bank of America Defendants," which plaintiffs defined earlier to include Bank of America, BAC and ReconTrust.   (FAC, ¶ 7.) Plaintiffs do not, however, explain which defendant took the alleged action or when.   Plaintiffs' FAC, therefore, is not a "plain statement" containing "simple" and "concise" allegations.   Rule 8(a), (d)(1).   Plaintiffs instead lump several defendants together as if they were a single entity.

In addition, plaintiffs' FAC fails as alleged against FNMA because plaintiffs do not allege any wrongdoing by FNMA at any point in their FAC.   Each cause of action only alleges wrongdoing or seeks declaratory relief against the "Bank of America Defendants" or MERS.

Defendants cannot reasonably respond to a complaint they do not understand.  For this reason alone, plaintiffs' FAC should be dismissed.

**B.       Plaintiffs' Breach of Contract Claim Fails**

Plaintiffs' first claim is for breach of contract.  Plaintiffs allege the Bank of America Defendants somehow breached the loan agreement by placing plaintiffs' loan account into default status.  (FAC, ¶ 85.)  Plaintiffs cannot plead the requisite elements.

The elements of breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiffs. *See, e.g.*, *Hi-Country Estates v. Bagley & Co.,*  No. 20090433, 2011 UT App. 24 (January 27, 2011).

Plaintiffs have not adequately pled any of the elements of this claim.  First, plaintiffs have not even pled the existence of a contract.  Plaintiffs allege the loan is a contract between plaintiffs and "Lender", who they allege to be Bank of America with FNMA as an investor. (FAC, ¶ 83.)  Previously, however, plaintiffs concede they entered into the loan agreement with First Magnus, and allege that Bank of America may have held an interest at some point, but that the note is allegedly owned by FNMA.  (*See* FAC, ¶¶ 10, 13, 24.)  Plaintiffs concede BAC is only the servicer of the loan and that ReconTrust is the substituted trustee.  (FAC, ¶¶ 12, 70.)  To the extent plaintiffs may be trying to allege that the trial payment plan was the contract at issue (*see* FAC, ¶ 84), plaintiffs do not attach such an agreement or cite to any of the material terms thereof.  Plaintiffs have not adequately pled the existence of a contract with any defendant.

Second, plaintiffs cannot allege their own performance under the contract.  Plaintiffs admit they suffered a loss of income and ultimately defaulted under the loan agreement.  (FAC,

¶¶ 26, 31.)  Plaintiffs' breach of the loan agreement through their admitted default thereunder dooms this claim.

Third, plaintiffs do not adequately allege a breach of any agreement by any defendant. Their only allegation is that "Bank of America Defendants" breached "the contract" by placing their loan account into default status.  (FAC, ¶ 85.)  Plaintiffs, however, do not attach any agreement or cite to any provision that defendants violated by allegedly placing the account into default status.  Also, plaintiffs' allegations are nonsensical since they concede they were in default under the loan agreement.

Lastly, plaintiffs cannot allege damages.  Plaintiffs allege they defaulted under the loan agreement in May of 2009 and that defendants considered and, ultimately, denied their modification request in December 2010.  Any action taken in furtherance of a foreclosure sale was therefore the direct result of plaintiffs' admitted default.  Moreover, as the January 2011 sale has been rescinded, plaintiffs cannot explain how they have been damaged by their inability to obtain a loan modification.

Plaintiffs cannot allege any of the required elements to support this claim and so it fails.

C.      **Plaintiffs' Breach of Duty of Good Faith and Fair Dealing Claim Fails**

In plaintiffs' second cause of action, they bring several allegations in support of their claim for breach of the implied duty of good faith and fair dealing.  Each of plaintiffs' allegations, however, is deficiently vague and, in some cases, contradicted by plaintiffs' own allegations.  Plaintiffs cannot plead the elements of this claim and it fails as such.

### 1.      Plaintiffs' Allegations Are Deficiently Pled and Contradictory

First, plaintiffs' allegations in support of this claim are deficiently vague and contradicted by plaintiffs' own allegations.  Plaintiffs allege the "Bank of America Defendants" breached the "contracts" by deliberately losing documents sent by plaintiffs, failing to properly apply payments, failing to communicate truthfully regarding plaintiffs' loan modification application, and instructing plaintiffs to become delinquent.  (FAC, ¶¶ 91-94.)  Plaintiffs, however, do not allege exactly which defendant(s) they are referring to, what documents or payments they are referring to, how defendants were untruthful, or when any of the alleged actions took place.  Simply put, defendants have not been put on notice of any alleged wrongdoing because plaintiffs' allegations are so vague as to be unintelligible.

Plaintiffs also allege the Bank of America Defendants breached their duty of good faith and fair dealing by foreclosing on plaintiffs' property during loan modification negotiations.  (FAC, ¶ 95.)  This allegation is contradicted by plaintiffs' own allegations for two reasons.  First, plaintiffs concede their loan modification application was denied prior to the sale and so there were not ongoing negotiations at that time.  (*See* FAC, ¶¶ 44, 49-50.)  Second, plaintiffs allege the sale was rescinded and so there has not been a foreclosure.  (*See* FAC, ¶ 52.)

Lastly, plaintiffs allege MERS breached its duty of good faith and fair dealing by "failing to maintain, administer and record documents in a reasonable manner."  (FAC, ¶ 96.)  Once again, plaintiffs' allegation is deficiently vague as plaintiffs do not allege what documents they are referring to or how MERS allegedly failed maintain, administer or record them.

All of plaintiffs' allegations in support of this claim are deficiently pled and so it fails.

2.      **Plaintiffs Cannot Plead the Elements**

Second, plaintiffs' claim fails for the reason discussed above – they do not adequately allege the existence of a contract with any particular defendant.  The existence of a contractual relationship between plaintiffs and defendants is an essential element of a breach of covenant of good faith and fair dealing claim.  *See, e.g., Brown v. Moore*, 973 P.2d 950, 954 (Utah 1998). Plaintiffs allege that each defendant is a party to the loan contract (FAC, ¶ 89), but that is belied by the loan documents and plaintiffs' previous allegations.  (*See* RJN, Exhibit 1.)  Plaintiffs have not adequately alleged the existence of a contractual relationship and so this claim fails.

Moreover, plaintiffs have not pled that any defendant did anything to destroy plaintiffs' rights under the note or deed of trust.  "Under the covenant of good faith and fair dealing, each party impliedly promises that he will not intentionally or purposely do anything which will destroy or injure the other party's right to receive the fruits of the contract." *Brown*, 973 P.2d at 954.  A breach of implied covenant claim cannot be used to create new rights not provided for by the contract.  *Id.* at 955.  Plaintiffs do not explain how any defendant did anything to injure plaintiffs' right to receive the fruits of the contract.  Plaintiffs contracted to obtain a loan under the express terms in the contract and concede that they obtained the money they contracted for. Plaintiffs' allegations regarding unspecified documents and payments cannot constitute a breach of the implied covenant of good faith and fair dealing.  "Where there is no breach of an express covenant in a contract, there can be no cause of action for breach of an implied covenant arising therefrom."  *Craner v. Northwestern Mutual Life*, 12 F. Supp. 2d 1234, 1242 (D. Utah 1998).

Plaintiffs cannot point to an express covenant in any contract that any defendant breached and, in fact, it is plaintiffs who admittedly breached the loan agreement by defaulting.  Plaintiffs

concede they obtained a loan and then defaulted thereunder and so they cannot bring a claim for breach of covenant of good faith and fair dealing.

### D.     Plaintiffs' Negligence Claim Fails

In plaintiffs' third cause of action they allege defendants breached their duty of care by failing to provide adequate oversight, policies and procedures, and failing to devote sufficient money and staffing toward the foreclosure process with respect to plaintiffs' loan.  (FAC, ¶¶ 104-105.)   Plaintiffs also allege MERS, BAC and ReconTrust took actions not allowed by statute.  (FAC, ¶¶ 106-107.)  Plaintiffs' claim fails.

#### 1.     Plaintiffs Cannot Plead the Elements

The elements of negligence are the traditional duty, breach, causation, and damages. *Webb v. University of Utah*, 125 P.3d 906, 909 (Utah 2005).  Plaintiffs cannot plead any of these elements.

Whether a duty of care is owed is entirely a question of law to be determined by the court.  *See Utah Power & Light Co. v. Fed. Ins. Co.*, 983 F.2d 1549, 1562 (10th Cir. 1993); *Rose v. Provo City*, 67 P.3d 1017, 1020 (Utah Ct. App. 2003).  Plaintiffs allege banks and their agents owe a duty to their customers in all dealings (FAC, ¶ 103), but plaintiffs' unsupported legal conclusion is false.  Lenders generally owe no duty to borrowers and it follows that a loan servicer would not owe a duty either.  *See, e.g. See First Sec. Bank N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1334 (Utah 1990); *Rhodes v. Wells Fargo Home Mortgage*, No. 2-10cv393-TS, 2010 WL 3222414, at *4 (D. Utah Aug. 16, 2010) ("under Utah law, a lender does not owe a borrower any fiduciary duties, including such alleged duty to investigate Plaintiff's ability to repay a loan").

Plaintiffs also have not adequately pled a breach of any duty because their allegations are once again deficiently vague. Plaintiffs allege "Bank of America Defendants" breached their duty due to improper compliance risk management, internal auditing and training, but plaintiffs fail to provide any support for these allegations. Plaintiffs' allegations concerning insufficient financial, staffing and managerial resources suffer from the same defect. Plaintiffs do not explain when or how the alleged breaches took place and do not even allege which defendant took or failed to take what action.

Lastly, plaintiffs cannot plead causation or damages. Plaintiffs allege they face immediate harm if their home is foreclosed upon, but concede no sale has occurred to date. (*See* FAC, ¶ 109.) Based on plaintiffs' allegations, it is clear they defaulted under their loan obligation more than two years ago and that no sale has occurred to date. Regardless, any sale is the direct result of plaintiffs' default and so they cannot allege any action of defendants caused them damages.

### 2.   Plaintiffs' Allegations Regarding MERS Fail

Plaintiffs allege MERS and Bank of America breached their duty by engaging in foreclosure activities without statutory authority to do so. (FAC, ¶ 106.) While plaintiffs' claim is again deficiently pled, presumably, they are referring to their previous allegation that MERS was not a proper beneficiary and so its assignment of the beneficial interest to BAC was invalid. (FAC, ¶¶ 17, 69.) Plaintiffs' allegations have been repeatedly refuted by this Court.

Numerous decisions from this Court have upheld MERS's authority to act as a beneficiary, conduct foreclosure proceedings, and to make assignments of deeds of trust. *Van Leeuwen v. Sib Mortgage Corp.*, Case No. 2:10-CV-730 TS, 2011 U.S. Dist. LEXIS 885 (D.

Utah Jan. 4, 2011) ("The central theory of Plaintiff's Complaint is that MERS lacks authority to foreclose on the deed of trust and to assign the deed of trust to a successor. This Court has already considered, and rejected, this theory and the Court finds no need to repeat its prior rulings on this issue."), (*citing Witt v. CIT Group/Consumer Finance Inc.*, No. 2:10-cv-440 TS, 2010 WL 4609368 (slip op.) (D. Utah November 5, 2010) and *Foster v. BAC Home Loans Servicing, LP*, No. 2:10-cv-247-TS, 2010 WL 3791976 (D. Utah Sept. 22, 2010)); *McGinnis v. GMAC Mortgage Corp.*, No. 2:10-cv-00301-TC, 2010 WL 3418204, *6 (D. Utah Aug. 27, 2010) (collecting cases); *Rhodes v. Aurora Loan Servicers LP*, No. 2:1-cv-00230 TC, 2010 WL 3219310, *2 (D. Utah Aug. 13, 2010) ("Courts have consistently held that MERS has the authority to foreclose on behalf of the lender and that MERS need not possess the note in order to appoint a trustee in behalf of the lender who does hold the note.").

Thus, MERS was a proper beneficiary under the deed of trust and it had the authority to assign its beneficial interest to BAC.

### 3.    Plaintiffs' Allegations Regarding ReconTrust Fail

Plaintiffs also allege ReconTrust is liable for negligence per se because it acted as trustee in violation of statute.  (FAC, ¶ 107.)  Plaintiffs do not expound on this allegation within their negligence claim, but they previously alleged ReconTrust is not a qualified trustee under UTAH CODE ANN. §§ 57-1-21, et seq.  (FAC, ¶¶ 71-77.)

This argument fails because those laws are inapplicable here.  Specifically, ReconTrust is a national banking association operating under the federal National Bank Act (**NBA**).  The NBA specifies that the state law applicable to ReconTrust's authority to act as trustee is the State law where the bank is "located" (12 U.S.C. § 92a(a)).  ReconTrust is clearly not "located" in Utah; it

has no physical presence in the State.  Instead, the local law made applicable to ReconTrust's authority to exercise trust powers by the NBA is, in this case (for the reasons discussed below) Texas law.  To the extent that Utah law imposes additional requirements on ReconTrust, it is preempted by the NBA and the Office of the Comptroller of the Currency's (**OCC**) regulations implementing the statute, 12 C.F.R. § 9.7.

      a.      **The National Bank Act Grants ReconTrust The Federal Right To Act As Trustee For Utah Properties Without Reference To Utah Law**

ReconTrust is a federally chartered national bank association (i.e., a national bank). ReconTrust operates under the NBA, 12 U.S.C. §§ 21 *et seq.*, and is regulated by the OCC.  *See* ReconTrust Company, National Association, Charter, OCC (Jan. 4, 2005) (RJN, Exhibit 5); *see also Cox v. ReconTrust Co., N.A.*, No. 2:10-CV-492 CW, 2010 WL 2519716, at *5 (D. Utah June 11, 2010), *appeal docketed*, No. 10-4117 (10th Cir. July 7, 2010) ("there is no dispute that ReconTrust is a national bank governed by the National Bank Act").  Here, ReconTrust was acting in its capacity as a national bank when it served as a trustee and began sale proceedings against the property.  *Accord Cox*, 2010 WL 251976 at *5.  Thus, ReconTrust's authority is derived from federal law.  However, under the NBA, federal law looks to the state law where the national bank is "located" to govern trustee powers.  In this case, Texas law is the relevant state law to which this Court must look to determine ReconTrust's trustee powers.

Section 92a(a) of the NBA gives the OCC the authority to grant national banks, like ReconTrust,  the federal "right to act as trustee, executor, administrator . . . or in any other fiduciary capacity in which State banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located" when such federal grant of authority is "not in contravention of" the

laws of that State.  12 U.S.C. § 92a(a).  After national banks were permitted by Congress to branch across state lines in 1994, the OCC addressed the issue of national banks' interstate trust operations by promulgating, after notice and comment, 12 C.F.R. § 9.7.

Section 9.7 applies a regime analogous to the one that the Supreme Court had previously approved in the context of national banks' interstate lending operations.  *See Marquette Nat'l Bank of Minneapolis v. First of Omaha Serv. Corp.*, 439 U.S. 299 (1978).  Specifically, national banks have, since *Marquette*, been permitted to adopt the interest rate of their "home state," i.e., the state in which the national bank is "located," and to export that interest rate to "host" states, notwithstanding host state usury laws.  In the interstate trust context, given that Section 92a(a) uses similar language to Section 85 referencing the law of the state where the national bank "is located," the OCC adopted a similar process to allow national banks to conduct their trust operations on a nationwide basis with reference to their home state law.

In this regard, the OCC has interpreted Section 92a to provide that national banks, like ReconTrust, "may act in a fiduciary capacity in any state."  12 C.F.R. § 9.7(a).  "A national bank acts in a fiduciary capacity in the state in which it accepts the fiduciary appointment, executes the documents that create the fiduciary relationship, and makes [the] discretionary decisions regarding the investment or distribution of fiduciary assets."  12 C.F.R. § 9.7(d).  Pursuant to section 9.7(e)(1), "[t]he State laws that apply to a national bank's fiduciary activities by virtue of 12 U.S.C. § 92a are the laws of the state in which the bank acts in a fiduciary capacity."

For states in which a national bank does not "act in a fiduciary capacity," i.e., those states in which the national bank does not perform the three functions listed in 12 C.F.R. § 9.7(d), the OCC has interpreted 12 U.S.C. § 92a in the context of interstate trust operations to provide that a

national bank may still act as a trustee for property located in such states: "While acting in a fiduciary capacity in one state, a national bank may market its fiduciary services to, and act as [a] fiduciary for, customers located in any state, and it may act as [a] fiduciary for relationships that include property located in other states." 12 C.F.R. § 9.7(b). In such instances, pursuant to 12 C.F.R. § 9.7(e)(1), "[t]he State laws that apply to a national bank's fiduciary activities by virtue of 12 U.S.C. § 92a are the laws of" the "home" state, i.e., the state in which the national bank "acts in a fiduciary capacity."

Here, it is clear that ReconTrust "acts in a fiduciary capacity" (as defined in 12 C.F.R. § 9.7(d)) for Utah foreclosures in the State of Texas. ReconTrust foreclosure documents involving plaintiffs' property were executed in Texas and contain Texas return addresses, indicating ReconTrust's trust operations for Utah properties – including where ReconTrust accepts Utah-based trust appointments, executes the documents related thereto, and makes decisions regarding Utah foreclosures – occur in Texas. (*See* RJN, Exhibits 2-4.) Indeed, nothing in plaintiffs' FAC indicates that Utah is where ReconTrust accepts its fiduciary appointment, executes documents creating the fiduciary relationship, or makes discretionary decisions. Accordingly, pursuant to 12 C.F.R. § 9.7(e)(1) "[t]he state laws that apply to [ReconTrust's] fiduciary activities by virtue of 12 U.S.C. § 92a are the laws of" Texas, not Utah. Indeed, pursuant to12 C.F.R. § 9.7(e)(2), host state laws, such as those of Utah, "limiting or establishing pre-conditions on the exercise of fiduciary powers are not applicable to national banks."

Texas law permits national banks, state banks, trust companies, and other corporations to act as trustee under deeds of trust and to exercise the power of sale with regard to such deeds of

trust.  TEX. FIN. CODE ANN. §§ 32.001, 182.001; TEX. PROP. CODE ANN. §§ 51.0001, 51.0074.

Thus ReconTrust is not acting in "contravention of State law" of the State in which it is

"located" for purposes of 12 U.S.C. § 92a and 12 C.F.R. § 9.7, when it performs trustee sales

with respect to Utah properties.

> **b.     Because Utah Law Prevents ReconTrust From Exercising Its Federally Granted Trust Powers, Those State Laws are Preempted By Operation of the Supremacy Clause.**

"In the area of national banking, the Supreme Court has repeatedly held that the nature of

a preemption analysis is different than in other areas of law.  While there is a general

presumption that state laws are not preempted by federal law, this presumption does not apply in

the context of national banking."  *Cox v. ReconTrust Co., N.A.*, 2010 WL 2519716 at *5 (citing

*United States v. Locke*, 529 U.S. 89 (2000) ("[A]n 'assumption' of non-preemption is not

triggered when the State regulates in an area where there has been a history of significant federal

presence," such as national banking.)).

The Supreme Court has held that state law is "ordinarily" preempted by the National

Bank Act and OCC regulations when it "prevents" a national bank from exercising its powers

under federal law.  *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 33 (1996).  Here,

ReconTrust has the federal right, "[w]hile acting in a fiduciary capacity in one state, [to] market

its fiduciary services to, and act as [a] fiduciary for, customers located in any state, and [to] act

as [a] fiduciary for relationships that include property located in other states."  12 C.F.R. §

9.7(b).[1]  As ReconTrust is "acting in a fiduciary capacity" in Texas, it may serve as a trustee for

---

[1] A June 13, 1986 OCC Interpretive Letter addressed a national bank acting as a trustee under a
deed of trust and found that "act[ing] as trustee under deeds of trust in favor of [a] Bank as
beneficiary" and "conduct[ing] trustee sales" are "permissible for a national bank as an aspect of

property located in Utah pursuant to 12 C.F.R. § 9.7(b), without reference to Utah's requirements, including those set forth in UTAH CODE ANN. §§ 57-1-21, 57-1-23, pursuant to 12 U.S.C. § 92a(a) and 12 C.F.R. § 9.7(e).[2]   Utah law, as plaintiffs propose this Court to interpret it, would "prevent" ReconTrust from exercising this federal authority under Section 92a as interpreted by Section 9.7.  As a result, under *Barnett Bank*, such an interpretation of the Utah statute at issue is preempted.[3]

       The OCC regulations support this conclusion.  The regulations make clear that the only state law that may be applied to the fiduciary activities of a national bank are the state laws that apply "by virtue of 12 U.S.C. § 92a," i.e., "the laws of the state in which the bank acts in a fiduciary capacity."  12 C.F.R. § 9.7(e)(1).  As discussed above, the applicable "State" with regard to ReconTrust is the State of Texas, which is a state that allows ReconTrust to conduct trustee sales.  Regarding any "other state laws," the OCC regulations provide that **any other**

---

trust powers granted by 12 U.S.C. § 92a."   OCC Interpretive Letter (June 13, 1986) (RJN, Exhibit 6).

[2] *See Fidelity Federal Sav. and Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153-54 (U.S. 1982) ("Federal regulations have no less pre-emptive effect than federal statutes. Where Congress has directed an administrator to exercise his discretion, his judgments are subject to judicial review only to determine whether he has exceeded his statutory authority or acted arbitrarily.").

[3] Even were the Court to look to Utah as the state in which ReconTrust is "located" for purposes of Section 92a(a), Utah Code Ann. §§ 57-1-21, 57-1-23 would still be preempted under the anti-discrimination principles of Section 92a(a).  Specifically, Utah law allows title insurance companies to act as trustee with the power of sale. *See* U.C.A. §§ 57-1-23, 57-1-21(1)(a)(i), (ii) and (iv).  Section 92a(a) prevents such discrimination by giving national banks the federal right to exercise trust powers where "corporations which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located."  This anti-discrimination principle is confirmed by binding and longstanding U.S. Supreme Court precedent. *Missouri ex rel. Burnes National Bank v. Duncan*, 265 U.S. 17, 24 (1924) (Holmes, J.) ("State cannot lay hold of its general control of administration to deprive national banks of their [federal trust] power to compete that Congress is authorized to sustain.").

**"state laws limiting or establishing preconditions on the exercise of fiduciary powers are not applicable to national banks."** 12 C.F.R. § 9.7(e)(2). The OCC confirmed this position in numerous interpretative letters, including finding preempted a Utah requirement "that completely prohibit[ed] [a national] Bank from engaging in fiduciary activities." OCC Interpretive Letter No. 866 at 10 (Oct. 9, 1999).[4]

Plaintiffs' attempt to use Utah law to exclude ReconTrust from exercising its fiduciary powers under the NBA is plainly preempted.

      c.      **Recent Utah Decisions Have Found that Federal Law Governs ReconTrust's Authority To Act As A Trustee With Respect to Utah Properties and that UTAH CODE ANN. § 57-1-21 Is Preempted.**

On March 3, 2011, Judge Waddoups issued a decision in *Cox v. ReconTrust*. *Cox v. ReconTrust*, 2010 WL 835893 (D. Utah March 3, 2011). The decision granted the *Cox* defendants' motion to dismiss and denied Cox's motions for partial summary judgment, to amend her complaint, and for a preliminary injunction pending appeal—all with prejudice as to Cox's 16-10a-1501 claim and without prejudice as to Cox's "trustee powers" (i.e., UTAH CODE ANN. § 57-1-21) claim. *Id.* at *7. The decision recognizes that federal law (specifically 12

---

[4] *See also, e.g.,* OCC Interpretive Letter No. 1103 at 3-4 (Sept. 18, 2008) ("a national bank may act as fiduciary for relationships that include property located in other states" and the OCC's "regulations further provide that with the exception of those state laws specifically referenced in Section 92a, any other state laws limiting or establishing preconditions on the exercise of fiduciary powers by a national bank are not applicable to national banks." The interpretive letter concludes that "[t]he North Carolina law imposing these requirements is preempted for national banks with fiduciary powers because the requirements directly conflict with the powers of national banks to act in a fiduciary capacity granted under federal law by section 92a and the OCC's regulations.") (citations omitted); *see also* OCC Interpretive Letter No. 872 at 5 (Oct. 28, 1999) (emphasis added) (providing that "a national bank may act in those fiduciary activities provided that *the law of the state in which the bank is located* does not prohibit competitors of national banks from conducting those fiduciary activities. A national bank also may act in any other fiduciary capacity in which national banks' competitors may act *under the laws of the state where the national bank is located*.").

U.S.C. § 92a) controls the trust powers of a national bank – including ReconTrust's authority to act as trustee on deeds of trust and to conduct trustee sales – and answers whether a national bank is properly exercising these federally granted trust powers. *Id.* at *4.[5]

And previously, in *Zabriskie v. ReconTrust Co.*, No. 08-155 BSJ (D. Utah Nov. 12, 2008), this Court  held that UTAH CODE ANN. § 57-1-21 was preempted by the federal Home Owners Loan Act (**HOLA**) with respect to ReconTrust, which at the time was a subsidiary of a federal savings association. *Id.* at 7-14.  Specifically, the court held that ReconTrust "may act as a trustee to the same extent to which state banks, trust companies, or other corporations which compete with federal savings associations are permitted to act under the laws of the State in which ReconTrust Company is located.  Here, ReconTrust Company is located in Texas.  Under Texas law, state banks and trust companies are permitted by statute to act as a trustee for a foreclosure sale."  *Id.* at 10.  Accordingly, *Zabriskie* held that "[b]ecause U.C.A. § 57-1-21(3) prohibits or restricts a federal savings association from exercising its federal powers to act as a trustee, the Court finds that it conflicts with federal law and is preempted by HOLA and the regulations promulgated [thereunder]."  *Id.* at 12.  The same analysis is applicable in this case under the NBA, which employs the same interstate trust regime as HOLA.  Therefore, to the extent that plaintiffs' claims rely on the assertion that ReconTrust is not a qualified trustee under Utah law, they must be dismissed.

---

[5] As background, a June 18, 2010 decision in the same case was appealed the Tenth Circuit.  *Cox*, 2010 WL 2519716, * 5; *Cox v. ReconTrust*, No. 10-4117 (July 7, 2010).  In this earlier decision, the Court granted the *Cox* defendants' motion to dissolve a state court injunction and denied Cox's motion to remand the case back to state court.  *Id.* at *5.  Cox appealed the decision to the Tenth Circuit, but it was dismissed on August 18, 2011. Docket, *Cox v. ReconTrust*, No. 10-4117.

**E.      No Intentional Infliction of Emotional Distress**

In plaintiffs' fourth cause of action, they allege "Bank of America Defendants" intentionally inflicted emotional distress on plaintiffs by making false statements about the sale of the home.  (FAC, ¶ 114.)  Plaintiffs' claim fails.

First, plaintiffs' claim is deficiently vague.  They do not identify which of the three "Bank of America Defendants" they are referring to, what statements were made, or when such alleged conduct took place.  Plaintiffs cannot maintain a claim based on such deficient pleading.

To the extent plaintiffs are relying upon the allegations in their introductory paragraphs concerning alleged statements made by an agent of "defendants" following the sale of the property, plaintiffs' claim still fails.  Plaintiffs allege that after the sale of the property on January 6, 2011, an agent of defendants entered the property and informed plaintiffs they must vacate. (FAC, ¶¶ 53-57.)  Plaintiffs also concede, however, that the sale was ultimately rescinded just a month later and that no sale has taken place to date.  (FAC, ¶ 52; RJN, Exhibit 4.)

Under Utah law, a plaintiff must prove four elements to establish an intentional infliction of emotional distress claim:

> (i) the [defendant's] conduct [complained of] was outrageous and intolerable in that it offended ... generally accepted standards of decency and morality; (ii) [the defendant] intended to cause, or acted in reckless disregard of the likelihood of causing, emotional distress; (iii) [the plaintiff] suffered severe emotional distress; and (iv) [the defendant's] conduct proximately caused [the] emotional distress.

*Rose v. Utah State*, No. 1:09-cv-695-TC (D. Utah December 16, 2009); *see also Retherford v. AT & T Communications of the Mountain States, Inc.*, 844 P.2d 949, 970-71 (Utah 1992).

Plaintiffs' allegations do not come close to meeting these elements.  Plaintiffs admit they defaulted under the loan agreement and allege that the sale would have been proper if not for plaintiffs strategically filing bankruptcy on the same morning as the scheduled sale.  Once

defendants became aware of the bankruptcy filing, the sale was rescinded.   "To be considered outrageous, the conduct must evoke outrage or revulsion; it must be more than unreasonable, unkind, or unfair." *Franco v. The Church of Jesus Christ of Latter-day Saints,* 21 P.3d 198, 206 (Utah 2001) (internal quotations omitted).   Furthermore, "[a]n act is not necessarily outrageous merely because it is tortious, injurious, or malicious, or because it would give rise to punitive damages, or because it is illegal." *Id.*   Plaintiffs' allegation that an agent of "defendants" made comments prior to defendants' knowledge of the bankruptcy filing cannot come close a showing of extreme and outrageous conduct and clearly could not have been made intentionally since the sale was rescinded thereafter.   Plaintiffs' own allegations refute this claim.

Plaintiffs' allegations set forth in the FAC simply do not rise to the level of the sort of outrageous or revolting conduct necessary to state a claim for infliction of emotional distress.

### F.   Plaintiffs' RESPA Claim Fails

In plaintiffs' fifth cause of action, they allege Bank of America and BAC violated the Real Estate Settlement Procedures Act (**RESPA**).   Specifically, plaintiffs allege Bank of America and BAC violated 12 U.S.C. § 2605 by failing to timely respond to a qualified written request (**QWR**) and by failing to provide the name of the person at the loan servicer who could provide assistance.  (FAC, ¶¶ 45-47, 119-120.)  Plaintiffs' claim fails.

First, plaintiffs' allegation that defendants did not timely respond to the alleged QWR is incorrect, based on plaintiffs' own allegations.  Plaintiffs allege they sent defendants a QWR on December 10, 2010 and that defendants responded on March 8, 2011, which plaintiffs allege is past the required 60 day response time.   (FAC, ¶¶ 45-47.)   Plaintiffs misunderstand the applicable statute.  A response to a QWR is due 60 days after receipt of the QWR, <u>not including</u>

weekends or holidays.  12 U.S.C. § 2605(e)(2).  As such, even if the alleged QWR was received on December 10 (plaintiffs only allege it was sent on that date), a response would not have been due until March 10, 2011.  As plaintiffs allege they received a response on March 8, 2011, there can be no violation.

Plaintiffs' claim also fails to the extent it is based on defendants' alleged failure to provide the name of a person at the loan servicer who could provide assistance to the plaintiffs. (FAC, ¶ 120.)   In order to bring a RESPA claim a borrower must be able to allege actual damages.  *See, e.g., Thayne v. Taylor, Bean & Whitaker Mortgage Corp.*, No. 1:09-CV-141 TS, 2010 WL 3546929, at *2-3 (D. Utah Sept. 10, 2010) (dismissing with prejudice claim for RESPA violation where borrower failed to show any actual damages resulting from the alleged failure to respond).  Here, plaintiffs concede throughout their FAC that they were in constant communication with defendants regarding their loan and a possible modification thereof.  As such, it is clear that they could not have been damaged by the alleged failure to provide the name of a person at the loan servicer and plaintiffs do not allege actual damages regardless.

### G. Plaintiffs' Promissory Estoppel Claim Fails

In plaintiffs' sixth cause of action, they allege Bank of America Defendants represented to them that they would receive a HAMP modification after making trial payments.  (FAC, ¶ 124.)  Plaintiffs' claim fails.

To prevail on a promissory estoppel claim, a plaintiff must prove: "(1) the plaintiff acted with prudence and in reasonable reliance on a promise made by the defendant; (2) the defendant knew that the plaintiff had relied on the promise which the defendant should reasonably expect to induce action or forbearance on the part of the plaintiff or a third person; (3) the defendant was

aware of all material facts; and (4) the plaintiff relied on the promise and the reliance resulted in a loss to the plaintiff." *James v. Wells Fargo Bank, NA*, 2011 U.S. Dist. LEXIS 53077, 10-11 (D. Utah May 17, 2011), citing *Youngblood v. Auto-Owners Ins. Co.*, 2007 UT 28, 158 P.3d 1088, 1092 (Utah 2007).

Plaintiffs' claim fails because they could not have reasonably relied on a promise of a modification.  The deed of trust clearly states that it cannot be modified except by written agreement.  (*See* RJN, Exhibit 1.)  Therefore, reliance upon an oral promise of modification would not be reasonable.  "[A] party cannot reasonably rely upon oral statements by the opposing party in light of contrary written information." *James v. Wells Fargo Bank, NA*, 2011 U.S. Dist. LEXIS 53077 (D. Utah May 17, 2011), *citing Gold Standard, Inc. v. Getty Oil Co.*, 915 P.2d 1060, 1068 (Utah 1996).

Plaintiffs also cannot show damages.  Plaintiffs obtained a loan and were obligated by contract to make payments thereunder.  They admittedly defaulted under that agreement and allege that defendants promised them a modification if they made certain trial payments. Plaintiffs, however, do not allege what actions they would or would not have taken had the alleged representations not taken place.  Plaintiffs were contractually obligated to make monthly payments to begin with, and so their alleged trial payments could not have harmed them, especially when it is considered that defendants gave up their right to foreclose while plaintiffs were making such payments.

Also, to state a claim for promissory estoppel, plaintiffs must demonstrate that the alleged promise was "certain or definite."  *J.R. Simplot Co. v. Sales King Int'l.*, 2000 UT 92 (plaintiff's "only evidence is a subjective understanding as to what Simplot's alleged statements meant. As a

matter of law, this is not adequate support for a claim of promissory estoppel.")  The very existence of an application process and the need for submission of financial documents demonstrates that a pre-application opinion regarding the likelihood that plaintiffs would qualify cannot be the basis for a promissory estoppel claim.  Plaintiffs do not allege statements that are sufficiently certain and definite to constitute a binding promise.  *Nunley v. Westates Casing Services, Inc.*, 989 P.2d 1077, 1089 (Utah 1999) ("the alleged promise must be *reasonably certain and definite*, and a claimant's subjective understanding of the promissor's statements cannot, without more, support a promissory estoppel claim.") (emphasis added).  Moreover, it would not be reasonable for plaintiffs to detrimentally rely on statements of a contingent future event that required approval.  *Youngblood*, 158 P.3d at 1095 ("Although we are sympathetic toward those who rely on an agent's misrepresentations, recovery can be permitted only when that reliance is reasonable.  To do otherwise would allow too much room for sympathy, passion, and error, and drastically diminish the predictability needed …").  Plaintiffs' reliance must be objectively reasonable.  *Rose v. Allied Dev. Co.*, 719 P.2d 83, 87 (Utah 1986).  Under the facts pleaded in the FAC, plaintiffs cannot have reasonably relied on any "promise" that they might qualify for a loan modification.

Finally, plaintiffs should not be entitled to the equitable relief of promissory estoppel because they have not paid their debt.  Promissory estoppel is an equitable claim and, as such, requires that plaintiffs first do equity before seeking relief.  *Andreason v. Aetna Cas. & Sur. Co.*, 848 P.2d 171, 174 (Utah Ct. App. 1993); *Huston v. Lewis*, 818 P.2d 531, 536-37 (Utah 1991) ("It is a well-established principle of equity that in order to claim equitable relief a party must have

acted in an equitable fashion."). Plaintiffs have not alleged that they have paid or even offered to pay their outstanding debt.

### H.      Plaintiffs' Declaratory Judgment Claim Fails

In plaintiffs' final cause of action, they request a declaration that ReconTrust is not a qualified trustee and that MERS, and subsequently BAC, is not a proper beneficiary under the deed of trust. (FAC, ¶¶ 130-133.) Plaintiffs' allegations were addressed at length previously and fail for the reasons discussed in Section D, *supra*. As this Court has held repeatedly, MERS is a valid beneficiary under the deed of trust and can initiate foreclosure proceedings and assign its interest pursuant to those terms. Also, plaintiffs' allegations concerning ReconTrust are preempted.

## CONCLUSION

For all of the reasons above, defendants respectfully request the Court grant their motion to dismiss plaintiffs' FAC without leave to amend.


Dated:  September 16, 2011                          Respectfully submitted,

                                                    */s/ Chandler P. Thompson*
                                                    Chandler P. Thompson
                                                    *Attorneys for Defendants*
                                                    *Bank of America, N.A., individually and as*
                                                    *successor by merger to BAC Home Loans*
                                                    *Servicing, LP, ReconTrust Company, N.A.,*
                                                    *Federal National Mortgage Association,*
                                                    *and Mortgage Electronic Registration*
                                                    *Systems, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on the 16th day of September, 2011, the foregoing

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**PLAINTIFFS' FIRST AMENDED COMPLAINT** was served upon the following person in

the manner indicated below at the following addresses:

> Daniel J. Morse
> Tara Nielson
> Utah Litigation Counselors, LLC
> 193 East Ft. Union Blvd. 2nd Floor
> Salt Lake City, Utah 84047
> (801) 462-2350
> (866) 867-1545
> *Attorneys for Plaintiffs*

☐   by **E-mail**
☒   by **CM/ECF**
☐   by **Facsimile Transmission**
☐   by **First Class Mail**
☐   by **Hand Delivery**


AKERMAN SENTERFITT LLP

*/s/ Chandler P. Thompson*
Chandler P. Thompson